## Fleming, Appellant, *v*. Fleming.

*Will—Legacy of a business—Promissory notes.*

Testator bequeathed the good will and proprietorship of his business to his brother, but out of its available assets the latter was to pay legacies mentioned in the will, and if these were not sufficient he was to carry on the business for the benefit of the testator's estate until sufficient money was realized to make up any deficiency in the moneys applicable to the payment of the legacies. The brother took possession of the business, conducted it, paid all the legacies, associated his sons in the business, and thereafter the firm issued certain promissory notes. The executors of the testator never had anything to do with the business, nor was the business conducted by the brother carried on on behalf of or for the benefit of the estate. The notes given by the firm, consisting of the brother and the sons, were not paid and suit was begun on them against testator's executors. *Held*, that the suit could not be maintained, and that a nonsuit was properly entered.

Argued Nov. 6, 1902. Appeal, No. 155, Oct. T., 1902, by plaintiff, from order of C. P. No. 2, Allegheny Co., Oct. T., 1896, No. 762, refusing to take off nonsuit in case of Laura W. Fleming, Executrix of John Fleming, Deceased, who survives John Bender and Levi Harris, trading as L. H. Harris Drug Company v. Cochran Fleming, surviving Executor of John Fleming, Deceased. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on a promissory note. Before SHAFER, J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*M. A. Woodward*, with him *R. T. McElroy* and *L. B. Duff*, for appellant, cited: Furst v. Armstrong, 202 Pa. 348.

*D. T. Watson*, with him *Johns McCleave*, for appellees, cited: Burwell v. Mandeville's Executors, 2 Howard, 560; Smith v. Ayer, 101 U. S. 320; McArdle v. West Phila. Title & Trust Co., 7 Pa. Superior Ct. 328.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1903:
This is an action by Laura W. Fleming, executrix of the

surviving member of L. H. Harris Drug Company against Alexander M. Byers and Cochran Fleming, surviving executors of John Fleming, deceased, to recover the amount due on forty-one promissory notes, aggregating over $100,000, with interest. The notes were made by Fleming Brothers and are payable four months after date to the order of L. H. Harris Drug Company, the first and last note being dated respectively May 31, 1890, and September 24, 1890.

At the time of his death John Fleming was engaged under the name of Fleming Brothers in the manufacture and sale of McLane's and other proprietary medicines in the city of Pittsburg. He died November 2, 1870, leaving a last will dated December 21, 1866, which was probated November 9, 1870. He left to survive him a widow and collateral heirs and appointed as his executors his brother, Cochran Fleming, Frank E. Porter and Alexander Byers. The testator made a number of pecuniary bequests amounting to about $100,000, in most of which there were two or three preceding successive life estates of the income thereof, during which the principal was directed to be invested by the executors. In addition to these bequests and after he bequeathed to his wife certain articles of a personal character and devised to her a life interest in some real estate, he provided in his will, inter alia, as follows : " To my brother Cochran, I give and bequeath the good will and proprietorship of McLane's and other medicines which I own and control, on the following conditions, to wit: That immediately on my death he take charge and carry on my said business ; and if it is found on examination of my affairs, that my available assets (in which are not to be included the warehouse and articles of a personal character hereinbefore bequeathed to my wife) are not sufficient to provide means wherewith to pay the foregoing pecuniary legacies in the order in which they are enumerated in this my last will, then that he carry on said business for the benefit of my estate until enough of moneys are realized by my said business to make good any deficiency in the moneys applicable to the payment of said legacies. On the payment of said legacies, my other executors will execute and deliver unto my said brother Cochran all bills of sale or conveyance of my said business and property connected therewith, which may be desired by the said Cochran.

" All the rest and residue of my estate after the payment of the foregoing legacies, and excepting the foregoing specific devises and legacies, I give unto my said brother Cochran absolutely. . . . It is my will that my brother Cochran do not part with my business in the manufacture and sale of patent medicines, but keep the same up by a proper system of advertisement and transmit it to his children."

Immediately after his brother's death, Cochran Fleming took possession of the business as legatee under the will and as his own property and carried it on for himself and for his own use and benefit in the name of Fleming Brothers. The accounts were kept in a new set of books which were opened after John Fleming's death. In 1875 or 1876 he formed a copartnership with his two sons, J. Kidd Fleming and Cochran Fleming, Jr., public notice of which was given in two newspapers of the city of Pittsburg, and under the firm name of Fleming Brothers the business was conducted for the benefit of the partnership, the profits being divided among the three partners, until 1890, when the firm failed. The executors of John Fleming never had any connection with the patent medicine business of their testator. The notes in suit were given by the firm, the name being signed by J. Kidd Fleming, and were given in exchange for notes by the L. H. Harris Drug Company to the order of Fleming Brothers, the proceeds of which were received by the latter firm.

It is not averred in the pleadings, nor was it proved on the trial that the assets of John Fleming's estate were not sufficient to pay the legacies. The evidence was that the estate was solvent; that the debts were paid and that the assets were amply sufficient to satisfy the claims of the legatees. In 1871, Cochran Fleming paid the pecuniary legacies named in the will and took receipts in the names of the executors from those who were first entitled to receive the income thereof for life. None of the legatees are complaining nor contesting his right to take possession of the property and use it for his own benefit after the death of John Fleming.

The learned trial judge very properly granted a nonsuit and withdrew the case from the jury. The claim of the plaintiff, as set forth in her statement, is that Cochran Fleming, after the death of his brother, took charge of and carried on the

business "under and pursuant to the terms of said will" of John Fleming, and that the notes in suit were given by Cochran Fleming while he was thus engaged in the business. To maintain the action, it was incumbent upon the plaintiff to establish the averments of her statement by the necessary proof. In this, as we have seen from the recital of the facts, she has failed. At the death of his brother, neither Cochran Fleming nor the executors of John Fleming, deceased, took possession of and carried on the business under the will. On the other hand, it distinctly and positively appears from the plaintiff's testimony that Cochran Fleming at once, after John Fleming's death, by advice of counsel, took charge of the business as legatee and conducted it solely for himself and on his individual account for several years and until his two sons were given interests therein by the formation of a copartnership. At no time during the continuance of the business from the death of John Fleming in 1870, till it was closed by the firm's insolvency in 1890, did Cochran Fleming or his partners hold out to the public that it was conducted by the executors or by Cochran Fleming under the provisions of the will. Creditors and persons dealing with the parties in charge of the business were not misled or deceived as to the true status of affairs. It was carried on by Cochran Fleming for his own use with the knowledge or consent of all the interested parties and subsequently by the copartnership as the owner and sole beneficiary of the business.

The bequest of the good will and proprietorship of the patent medicines to Cochran Fleming was on the condition that he take charge of the business and if its available assets were not sufficient to pay the legacies, then he was to carry on the business for the benefit of the testator's estate until sufficient money was realized to make up any deficiency in the moneys applicable to the payment of the legacies. It will be observed that the executors were not given control or possession of the business and were not authorized to interfere with it in anyway. It was bequeathed specifically to Cochran Fleming and he was to take charge of it immediately on the death of the testator. The only condition imposed was that if sufficient available assets were not found to pay the legacies, the legatee should carry on the business until the deficiency was made up. The title

to the business was placed in the legatee, and upon him individually was imposea the responsibility of meeting any ascertained deficiency in the assets. The evidence discloses the fact that the condition upon which he took the business was performed and that the pecuniary legacies were paid in full. This is not contested by the legatees or by any person representing, or entitled to, their interest in John Fleming's estate. The receipts in evidence show the payment of the legacies in 1871 and whatever necessity there might have been for continuing the business prior to that date in order to make up the deficiency there could be no reason for carrying it on thereafter.

There is another reason in line with the one just stated which we think must prevail against the right of the plaintiff to recover. It conclusively appears that the partnership formed by Cochran Fleming and his two sons in 1875 or 1876 took possession of the business and, while carrying it on, gave the notes in suit. It cannot be pretended that at that time this firm was Cochran Fleming doing business as Fleming Brothers, who conducted the business prior to the partnership, nor that the partnership was not running the business solely in its own interest and for its own benefit at the dates the notes were delivered to the payees. The notes in suit were signed by J. Kidd Fleming with the firm name of this partnership and were exchanged for notes given to it. Neither the estate of John Fleming, nor his executors, nor Cochran Fleming as Fleming Brothers, was in anyway connected with the transaction or involved in the obligation assumed in making the notes.

There was no necessity for the execution and delivery of bills of sale or conveyance to vest the business in Cochran Fleming. The matter was entirely optional with him. It will be seen by reference to the will that his coexecutors were to execute and deliver to him "all bills of sale or conveyance of my said business . . . . which may be desired by the said Cochran." He desired no other assurance of title than the possession of the property which he took and retained after his brother's death.

The plaintiff's action must fail for want of evidence to support it. The notes in suit were not given for any indebtedness of testator's estate nor by any person in charge of, or carrying on, the business of the estate, or authorized to bind it by note

or other obligation.    The indebtedness was that of the partnership and the creditor firm so understood it when it accepted the notes.    The liability for payment rests upon the party creating it and to whose use the proceeds of the notes were applied.

For the reasons given we are of opinion that the plaintiff has failed to establish any liability on the part of the executors of John Fleming, deceased, for the payment of the notes in suit and that, therefore, the nonsuit was properly granted.

The assignments of error are overruled and the judgment is affirmed.